CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
*for Roanoke*
MAR 15 2013
JULIA C. DUDLEY, CLERK
BY: M. Hupp
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| SAMUEL A. MARVIN, | ) | Civil Action No. 7:11-cv-00609 |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARK, | ) | By:  Hon. Jackson L. Kiser |
| **Respondent.** | ) | Senior United States District Judge |

Samuel A. Marvin, a Virginia inmate proceeding pro se, filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  Respondent filed a motion to dismiss, and

petitioner responded, making the matter ripe for disposition.[1]  After reviewing the record, I find

petitioner is not entitled to habeas relief, and I dismiss the petition.

## I.
## A.

In the last week of March 2006, Stacy Rose was driving her daughter P.R. and her

daughter's six-year old friend, who is the victim and lived with petitioner and her mother, to a

pottery store.  During the car ride, the children began to tickle each other, and when Stacy told

them to stop, the victim remarked that she and petitioner tickled each other all the time, even

when bathing together.  Stacy was concerned and asked why she was bathing with petitioner, and

the victim replied that she did not really like bathing with petitioner because "he makes me do it

and he makes me wash his thing."  Stacy asked the victim if petitioner ever washed her bottom,

and the victim said yes and that she didn't like it because "at one time . . . . [h]e scratched me

---

[1] The court received petitioner's timely response to the motion to dismiss on June 4, 2012, and received petitioner's
motion to amend that response sixteen days later.  Pursuant to Rule 15(a), Fed. R. Civ. P., I grant petitioner's motion
to amend, and the amended response (ECF no. 49) replaces petitioner's original response.

down there." Stacy suggested that the victim let her mother give her baths from now on and asked the victim to tell her "[i]f this happens again."

Later that week, Stacy asked the victim about having Desitin "put there." The victim said she was afraid it would burn "because her father had scratched her with his fingernail up in there." Stacy also overheard the victim telling P.R. that petitioner would hurt the victim's mother and would not allow the victim to play with P.R. anymore if the victim tattled on petitioner.

On April 5, 2006, Stacy told the victim's mother that she thought petitioner had been sexually abusing the victim. She repeated what the victim had said, the mother began weeping and asked for Stacy's help, and Stacy told her to call the Department of Social Services. The mother called and made an appointment for someone to talk to the victim at school the next day.

The mother told the victim that some people were going to talk to her at school and that she should answer their questions about what she had told P.R. about petitioner. While the mother talked, the victim quietly drew and then handed her mother a drawing that showed a small figure touching a large figure between the legs in a large tub. As the mother looked at the picture, she heard the back door to the house slam. Realizing petitioner would be in the room in seconds and believing he would demand to know what she was doing if he caught her trying to hide the drawing, the mother quickly threw it into the fiery hearth.

On April 7, 2006, the victim told a representative from Social Services and Lieutenant Connie Smith of the Rappahannock County Sheriff's Office that she and petitioner had bathed together and that he had touched her "inside and outside [her] private spot," which "stung like a bee." The victim also said that she and petitioner showered together and that he made her wash

2

his penis. The victim said she was afraid of petitioner and that petitioner had threatened to kill her mother. The victim also said petitioner had threatened to take her away from her mother because her mother was evil.

Petitioner was arrested that night and agreed to speak with Lt. Smith. He denied inappropriately touching the victim, having her touch him, and ever showering with her. Although he admitted bathing with her, he claimed he was clothed in undershorts and a T-shirt.

However, petitioner told a different story while incarcerated. On the first day of his arrest, petitioner told fellow inmate Darryl Brown that he had bathed the victim while they were both naked to "wash her vaginal area."[2] He also told Brown he had the victim wash his penis to "teach her about body parts" and how to wash, and he insisted he was motivated only by "fatherly love."

After petitioner's arrest, the mother asked the victim to redraw the picture she had given the mother the night before, and the victim drew two copies of the first drawing thrown into the fire. These drawings were admitted at trial, and the victim explained that the figures represented her and petitioner and showed petitioner "making me touch his private part." The victim further testified that petitioner had, while naked and bathing with her, "stuck his finger down my private part." The victim demonstrated how petitioner had done this with two anatomically-correct dolls. She testified that petitioner put his finger all the way inside her, it "hurt really bad," and it "stung like a bee." The victim testified this happened more than once and that afterward petitioner told her, "Keep this a secret, and I won't hurt your mom." The victim further testified

---

[2] Brown testified that he was in jail on a charge of violating probation. Brown also testified that the Commonwealth offered to nolle prosse a perjury charge and request a two-month active sentence for Brown's plea of no contest to an obstruction of justice charge if Brown testified against petitioner.

that petitioner had showered with her, they were both nude, and petitioner had made her "touch his private part" and wiggle her hand on it after again warning her to keep it a secret. The victim also demonstrated this act with the dolls. Barbara Adolfi, a licensed clinical social worker, testified that she counseled the victim after petitioner was arrested and diagnosed the victim with post-traumatic stress disorder, which the victim was still suffering at the time of trial.

Wendy Boyce, the mother of another of the victim's friends, testified that in 2006 she had overheard the victim ask Wendy's daughter if she had ever seen a man's penis. When her daughter said she had not, the victim asked "not even your daddy's?" When her daughter again said no, the victim stated, "Well, [petitioner] shows me his all the time." The victim then looked up and saw Wendy, threw down the doll she was holding, said she did not want to play anymore, and went to the other side of the room.

The victim had repeatedly asked Wendy what she would do if she discovered her daughter and husband had a secret – would she be mad at or hate her daughter? Eventually, the victim asked Wendy if Wendy would leave her daughter if Wendy found out her daughter and husband had a secret that Wendy did not know.

Wendy explained that she had noticed when visiting the victim's home that the victim always needed her mother to go with her to the bathroom but that the victim normally did not need anyone to go to the bathroom with her when visiting Wendy's home. Wendy explained a notable exception, however, that occurred when petitioner, the mother, and the victim visited Wendy's home on July 4, 2005. The victim approached Wendy and said she needed to go to the bathroom while petitioner and the mother were outside. When Wendy told the victim her mother was busy and to go to the bathroom alone, the victim refused, saying she needed her mom.

Wendy asked if the victim wanted her to get petitioner, and the victim got very upset and started to cry. Wendy took the victim to the bathroom and talked to her through the door until she was done. When the victim needed to use the bathroom again later that day, she "dragged her mom to the bathroom" with her.

## B.

The Circuit Court of Rappahannock County sentenced petitioner on September 14, 2007, to, inter alia, an active sentence of 12 years' imprisonment after a jury convicted him of taking indecent liberties with the victim with whom he had a custodial relationship, in violation of Virginia Code § 18.2-370.1, and aggravated sexual battery, in violation of Virginia Code § 18.2-67.3. Petitioner appealed to the Court of Appeals of Virginia, arguing that the trial court erred by (1) denying his proposed jury instructions about the risk of relying on testimony from a jailhouse informant, and (2) overruling petitioner's objection and directing him to respond to the prosecutor's question about why petitioner thought the victim was lying. The Court of Appeals affirmed the convictions, and petitioner appealed to the Supreme Court of Virginia, which refused the appeal.

Petitioner filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, which dismissed the petition because the claims were procedurally defaulted or meritless. Petition timely filed the instant federal habeas petition, arguing 101 claims:

1. The investigator who interviewed the victim was not proven qualified to do so;
2. Social Servicers violated Virginia Code § 63.2-1526 by not making a finding of abuse or neglect prior to trial;
3. Counsel was ineffective for not requesting a change of venue;
4. Social Services records cannot be considered because they are redacted;
5. Social Services records cannot be considered because the victim's physical exam showed no injury;

6.   The trial court improperly admitted evidence of petitioner's prior conviction and military discharge;

7.   The jury was not properly instructed on the dangers of considering the testimony of jailhouse informants;

8.   Petitioner was denied a hearing by Social Services, as required by Virginia Code § 63.2-1526;

9.   Counsel was ineffective for not cross examining all of the prosecution's witnesses;

10.  The Court of Appeals of Virginia erred by allowing a retired judge to sit en banc, which is prohibited by 28 U.S.C. § 46-C;

11.  Counsel was ineffective for not objecting to unspecified hearsay testimony;

12.  Counsel was ineffective for refusing to cross-examine two of the Commonwealth's witnesses: Stacy Rose and Barbara Adolfi;

13.  Counsel was ineffective for allowing the admission of unspecified untrustworthy evidence and testimony;

14.  Counsel was ineffective for depriving petitioner the right to present unspecified witnesses at trial;

15.  Counsel was ineffective for not filing a motion to change venue;

16.  Counsel was ineffective for not objecting to unspecified hearsay testimony;

17.  Petitioner was denied his choice of counsel as guaranteed by the Sixth Amendment;

18.  Counsel was ineffective for not objecting to the admission of the victim's drawings;

19.  Petitioner's attorney did not receive petitioner's calls about evidence for trial;

20.  Counsel was ineffective for not appealing the decision of Social Services;

21.  Counsel was ineffective for not preparing, thereby missing an opportunity to impeach A.H., a woman who testified during the sentencing hearing that petitioner had abused her when she was a child;

22.  Counsel was ineffective for not objecting to Brown's testimony on the ground that no recording was available to verify petitioner's confession to him and that Brown's testimony was induced by the Commonwealth's offer of leniency;

23.  Counsel was ineffective for not requesting petitioner's presence when the trial court answered two questions from the jury;

24.  Counsel was ineffective for not requesting the trial judge's recusal because the judge was assigned to hear petitioner's divorce case;

25.  Counsel was ineffective for informing Social Services of his intent to appeal without informing petitioner;

26.  Counsel was ineffective for not objecting when the Commonwealth called a surprise witness;

27.  Petitioner was wrongly denied a post-conviction stay of transfer to finish his divorce proceedings;

28.  Counsel was ineffective for not appealing Social Services' finding;

29.  Counsel was ineffective for not arguing that the interview of the victim violated petitioner's rights because the interview was not recorded and the victim was improperly asked leading questions;

30.  Petitioner's first appellate attorney was ineffective for not conducting an adequate

investigation and not amending the petition for appeal based on unspecified new evidence;

31. Petitioner received ineffective assistance of counsel on appeal because new counsel was assigned to the appeal;

32. Counsel was ineffective because he did not appeal Social Services' determination;

33. Counsel was ineffective for not raising unspecified issues on appeal;

34. The second attorney assigned to the appeal was ineffective for not conducting an investigation;

35. The trial court abused its discretion by allowing counsel to withdraw before new counsel was appointed;

36. Counsel was ineffective for not objecting to the admission of petitioner's military discharge;

37. The victim was denied the right to a guardian ad litem;

38. Counsel was ineffective for not adequately arguing petitioner's motion for bond, and the trial court erred by denying the motion for bond;

39. Counsel was ineffective for:
    i.   Not arguing that the trial judge should be recused,
    ii.  Not raising the issue on appeal, and
    iii. Not requesting a new trial;

40. The trial court erred by denying a motion to continue the preliminary hearing so petitioner could hire new counsel;

41. Counsel was ineffective because he:
    i.   Did not have specialized training in child psychology;
    ii.  Did not receive training in advanced questioning techniques; and
    iii. Did not hire an expert in social attitudes to disqualify the victim's testimony on the ground that it was influenced by petitioner and the mother's marital problems;

42. i.   Petitioner was the victim of prosecutorial misconduct in that the prosecutor admitted into evidence the knife petitioner used to threaten the daughter, and
    ii.  Counsel was ineffective for not objecting to the knife's admission;

43. Appellate counsel was ineffective for not preparing for oral argument and not having a court reporter transcribe the argument;

44. Counsel was ineffective for not appealing Social Services' finding;

45. Counsel was ineffective for not objecting to the mother's testimony on the ground that she was a witness in the divorce case;

46. i.   Counsel was ineffective for not objecting to A.H.'s testimony as perjured, and
    ii.  The prosecutor improperly presented the same perjured testimony;

47. The trial court erred by not staying petitioner's transfer to the Virginia Department of Corrections pending the conclusion of the divorce proceedings;

48. The trial court erred by giving an "improper" informant instruction;

49. The trial court erred by refusing to correct petitioner's presentence report;

50. The trial court erred by failing to wait for petitioner to say whether he wanted a jury trial or bench trial;

51. The trial court erred by failing to seat alternate jurors;

7

52. The trial court erred by seating an all-white jury;
53. Petitioner was the victim of prosecutorial misconduct because the prosecutor shook the jurors' hands after voir dire;
54. Petitioner was the victim of jury nullification;
55. The jury was tainted when one potential juror asked to be removed because she was the victim of a similar crime;
56. The trial judge was biased because he was also the judge in petitioner's divorce case;
57. Counsel was ineffective for allowing a violation of Brady v. Maryland, 373 U.S. 83 (1963), when A.H. testified that she had no memory of an incident to which she had previously testified had occurred;
58. Petitioner was improperly denied the right to vote while awaiting trial;
59. Investigator Smith was biased because she went to the same Alcoholic Anonymous meetings as petitioner and because she was running for Sheriff;
60. Petitioner's right to a speedy trial was violated;
61. Petitioner was denied the right to a fair trial because of the media reports of the crime;
62. The trial court erred by appointing a public defender to represent petitioner;
63. Petitioner's FOIA request for Judge Hoss' designation order was improperly denied;
64. Petitioner was denied the right to represent himself in the Supreme Court of Virginia;
65. Petitioner's motion for new counsel on appeal was improperly denied;
66. The trial court erred by not correcting unspecified errors in petitioner's presentence report;
67. The trial judge was biased because he was also the judge in petitioner's divorce case;
68. Social Services improperly denied petitioner the opportunity to participate in its proceedings;
69. The prosecutor improperly tampered with the exhibits, specifically the knife and the victim's drawings;
70. The prosecutor:
    i.   Obtained the knife illegally because the mother gave it to the prosecutor,
    ii.  Did not provide discovery of the knife, and
    iii. Did not establish a chain of custody for the knife;
71. The prosecutor:
    i.   Improperly maintained dolls used by the victim during trial, and
    ii.  Rehearsed the victim's testimony with the dolls;
72. The prosecutor improperly appealed to the jury's emotions and failed to admit the results of the victim's physical exam;
73. The prosecutor improperly admitted evidence of petitioner's military discharge, which was illegally obtained from the mother because it was a privileged marital confidence and should be considered an attorney-client privilege;
74. The trial court erred by scheduling a hearing in the divorce proceedings during trial;
75. Petitioner was falsely arrested because he should have been released when the victim's physical examination showed no trauma;
76. The prosecutor improperly wrote a derogatory letter to the psychologist who evaluated petitioner for competency;

77. The trial court improperly denied petitioner's motion for a continuance of the preliminary hearing so petitioner could retain counsel to replace court-appointed counsel;

78. The trial court erred by allowing petitioner to appear at the preliminary hearing and at his psychological evaluation in prison garb and leg shackles;

79. The trial court abused its discretion by denying petitioner's motion for a continuance of the preliminary hearing so he could retain an attorney to replace the court-appointed attorney;

80. i.   The trial court abused its discretion by allowing the mother and her friends to testify because the mother was divorcing petitioner, and
     ii.  Trial counsel was ineffective for failing to object to the testimony of these witnesses on the same ground;

81. The trial judge:
     i.   Abused his discretion by not recusing himself because he was the trial judge in petitioner's divorce case,
     ii.  Improperly badgered petitioner into giving the mother power of attorney over their marital property, and
     iii. Allowed the jury in the criminal case to overhear the above proceeding;

82. The trial judge erred by failing to recuse himself from petitioner's divorce proceedings;

83. The trial judge improperly sat by designation, in violation of 28 U.S.C. §§ 294-295;

84. The Clerk of Court erred by simultaneously scheduling petitioner's divorce and criminal cases;

85. The prosecutor improperly offered Brown consideration, and Brown's testimony was inadmissible hearsay;

86. The Indigent Defense Council violated FOIA by failing to provide petitioner with the training records of the attorneys who represented him;

87. Social Services erred by considering his convictions as final before the conclusion of direct appeal and habeas corpus proceedings;

88. The judge who presided over petitioner's preliminary hearing was biased and therefore improperly denied petitioner's motion for a continuance;

89. The trial court erred by denying petitioner's counsel's motion to withdraw, despite the fact that the attorney-client relationship had deteriorated and that counsel had a conflict of interest;

90. The prosecutor was biased because petitioner had worked with him, because petitioner had argued with the prosecutor's wife, and because petitioner and the prosecutor had children at the same school, and thus, the prosecutor should have recused himself;

91. Petitioner was denied due process because he was arrested and charged before Social Services completed their investigation;

92. The jurors were exposed to unspecified extrinsic influences that prejudiced them against petitioner;

93. The trial court erred by refusing to admit documents about petitioner's divorce;

94. The prosecutor improperly introduced the victim to the judge before trial, prejudicing the judge before he was called on to determine if the victim was competent to testify;

95. The prosecutor withheld evidence, specifically the Sexual Assault Nurse Examiner

report, Brown's criminal history, and the perjured testimony of A.H., whose allegations of child abuse were deemed unfounded by Social Services;

96. The trial court erred by finding petitioner indigent and appointing counsel to represent him;

97. The trial judge was biased because of his own marital problems;

98. The trial judge erred by failing to ask petitioner's counsel if counsel had a conflict of interest;

99. The questioning of the victim violated petitioner's Fourth Amendment rights;

100. Petitioner's arrest violated the Fourth Amendment because there was no probable cause to believe petitioner had committed a crime and because his arrest was based on unspecified illegally obtained evidence; and

101. Petitioner should not have been forced to speculate about why the victim lied about what petitioner did not do.

## II.

A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims 1, 2, 4-5, 8, 10, 20, 25, 27-28, 32, 37, 38, 44, 47, 49, 50-51, 58, 63-64, 66, 68, 70(i)-(iii), 71(i), 73-74, 76, 81(ii), 82-87, and 99-101 do not relate to any federal law and must be dismissed.

Claims 2, 4, 5, 8, 20, 25, 28, 32, 44, 68, and 87 relate to the Virginia Department of Social Services' investigation and civil proceedings about petitioner's abuse of the minor victim. Claims 27, 38, 47, and 58 relate to the conditions of petitioner's pre- and post-conviction confinement. Claims 74, 81(ii), 82, and 84 relate to petitioner's divorce proceedings. Claims 63 and 86 relate to petitioner's post-conviction requests for documents under the Freedom of Information Act. None of these claims are cognizable in habeas proceedings because they do not describe how petitioner is in custody in violation of federal law for civil proceedings and other issues not related to petitioner's guilt.

10

Claims 50 and 51 relate to alleged violations of state law; petitioner does not have a federal right to a bench trial or to alternate jurors. See, e.g., U.S. Const. amend. VI (providing a constitutional right to a jury trial but not a concomitant right to a bench trial); Singer v. United States, 380 U.S. 24, 34 (1965) (holding no federal right to a bench trial); Va. Code § 8.01-360 (authorizing a trial court the discretion to select additional, alternate jurors for a criminal trial).

Claims 10, 64, and 83 relate to the conduct of the trial and appellate courts. Specifically, petitioner argues that the trial judge and a judge of the Court of Appeals of Virginia improperly sat by designation and that petitioner was denied the right to represent himself in the Supreme Court of Virginia. These claims do not state a violation of federal law. Petitioner does not have a federal right to represent himself on appeal, and whether a Virginia judge may sit by designation is governed by Virginia law, not federal law. Martinez v. Court of Appeal, 528 U.S. 152, 161 (2000); Va. Code § 17.1-105.

Petitioner alleges in claim 1 that the investigator who interviewed the victim was not qualified, alleges in claim 37 that the victim was denied a guardian ad litem, alleges in claims 49 and 66 that the trial court erred by failing to correct unspecified errors in his presentence report,[3] alleges in claim 71(i) that the prosecutor improperly maintained the anatomically-correct dolls by allowing inmates to touch them, and alleges in claim 76 that the prosecutor wrote a derogatory letter to the psychologist who evaluated petitioner's competency. Petitioner does not describe any violation of federal law for these claims, and no such claim is apparent.

Petitioner alleges in claim (70)(i) that the prosecutor obtained the knife illegally because the mother gave it to the Commonwealth, alleges in claim (70)(ii) that the prosecutor failed to

---

[3] At sentencing, petitioner's counsel asked that one correction be made to the report: to update petitioner's marital status from "married" to "divorced and remarried." The trial court agreed to make the change.

provide discovery of the knife, and alleges in claim (70)(iii) that the prosecutor failed to establish a satisfactory chain of custody for the knife.[4]  These claims do not present a violation of federal law.  See Gray v. Netherland, 518 U.S. 152, 168 (1996) (no constitutional right to discovery); Hutchins v. Garrison, 724 F.2d 1425, 1437 (4th Cir. 1983) (recognizing the admissibility of evidence in state trials is a matter of state law and procedure not involving federal constitutional issues unless the evidence relates to mitigation for the death penalty).

Petitioner alleges in claim 73 that the prosecutor violated marital confidentiality and the attorney-client privilege by obtaining evidence from the mother about petitioner's dishonorable military discharge for selling LSD.  These two privileges arise from common law rules and generally do not implicate the Constitution.  See Trammel v. United States, 445 U.S. 40, 44 (1980) (recognizing the privilege against adverse spousal testimony as a common law rule, modified by rules of evidence and determining only testifying spouse may invoke privilege); Smith v. Moore, 137 F.3d 808, 819 (4th Cir. 1998) (recognizing the attorney-client privilege is a common law rule generally not implicating the constitution).  Petitioner does not describe a violation of a marital or attorney-client privilege, and petitioner fails to establish how these common law privileges relate to a federal right.

Petitioner argues in claim 85 that Darryl Brown should not have given hearsay testimony merely because he made a favorable deal with the Commonwealth.  However, the hearsay rule is not implicated by the Commonwealth's offer of leniency, the hearsay rule does not apply to

---

[4] The victim testified during trial that petitioner showed her his tattoo of a knife and that seeing that tattoo scared her "a little bit."  The Commonwealth introduced the actual knife that was the model for the tattoo and was kept in the family's home.

12

petitioner's admissions to Brown or statements against interests, and claim 85 does not relate to a federal right.

Petitioner alleges in claims 99 and 100 that the victim's interview violated the Fourth Amendment and caused petitioner to be arrested without probable cause. These claims are not cognizable on federal habeas review because claims 99 and 100 were capable of full and fair litigation in state court. Stone v. Powell, 428 U.S. 465, 494 (1976). See Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978) ("Fourth Amendment claims, should, under the rule in Stone v. Powell . . . first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice."); Va. Sup. Ct. R. 3A:9 (permitting defenses and objections to be raised before a criminal trial).

Petitioner argues in claim 101 that he should not have been forced to speculate on the victim's testimony.[5] Petitioner denied all of the victim's accusations during direct examination, and during cross examination, the prosecutor asked petitioner, "And why is she lying against you?" The trial court overruled petitioner's objection for speculation and directed him to answer, and the prosecutor asked anew, "If you know, why is [the victim] . . . here testifying under oath and lying against you, the same as she did at the preliminary hearing?" Petitioner answered, "No excuse." The Court of Appeals of Virginia determined that the trial court did not abuse its discretion by overruling counsel's objection and compelling petitioner to answer and that, even if it did err, any error was a non-constitutional harmless error. Petitioner does not describe how his own answer to the question violated a federal right, and no such violation is apparent.

---

[5] Petitioner presented this claim to the Supreme Court of Virginia on direct appeal after the Court of Appeals rejected the merits of the claim.

## III.
### A.

A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). See 28 U.S.C. § 2254(b) (mandating exhaustion). The purpose of exhaustion is to give "state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 846 (1999). The exhaustion requirement is satisfied by finding that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U. S. 270, 275-76 (1971)). Therefore, petitioner must present both the same argument and factual support to the state court prior to filing the claim with a federal court. Anderson v. Harless, 459 U. S. 4, 6-7 (1982).

Petitioner did not present to the Supreme Court of Virginia claims 1-2, 5-6, 8, 10, 13, 18-20, 22, 25-29, 31-32, 36-38, 39(ii)-(iii), 41(i)-(iii), 42-45, 46(ii), 47, 49-55, 58-61, 63-66, 68-69, 70(i)-(iii), 71(i)-(ii), 72-74, 76, 78, 80(i)-(ii), 82-87, 90, and 95.[6] The fact that the totality of facts and legal arguments asserted in petitioner's excessively voluminous filings may have touched upon some of these claims is not sufficient to establish exhaustion. Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994). See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (finding that

---

[6] Petitioner did not present the First Amendment arguments now raised in claims 30, 33, and 34 although he did present the Sixth Amendment arguments for claims 30, 33, and 34. Accordingly, claims 30, 33, and 34 are exhausted as to the alleged Sixth Amendment ineffective assistance of counsel violations but not exhausted for the alleged First Amendment violations.

a § 2254 claim is not "fairly presented" for exhaustion purposes if petitioner relied on different facts or a different rule of law for a similar claim in state proceedings). "A habeas petitioner cannot simply apprise the state court of the facts underlying a claimed constitutional violation; the petitioner must also explain how those alleged events establish a violation of his constitutional rights." Mallory, 27 F.3d at 994 (citations omitted). "This [rule] recognizes the difficulties that would arise if a federal court were to evaluate whether vague whispers offered to a state court by a habeas petitioner sufficed to alert that court to a federal constitutional violation." Id. at 995-96. If the Supreme Court of Virginia misrepresented or overlooked a claim, petitioner could have filed a petition for rehearing, but he did not. See Va. Sup. Ct. R. 5:37 (permitting a petition for rehearing); Gray v. Netherland, 99 F.3d 158, 166 (4th Cir. 1996) (recognizing a petition for rehearing is the means to correct an appellate court's omission of misconstruing a claim); Jasper v. Braxton, No. 7:11-cv-00188, 2012 U.S. Dist. LEXIS 39549, at *9-10 (W.D. Va. Mar. 22, 2012) (same).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray, 518 U.S. at 161). Virginia Code § 8.01-654(B)(2), which prohibits successive petitions based on claims that could have been raised in a prior petition, and § 8.01-654(A)(2), which bars petitions filed beyond the limitations period, are both independent and adequate state procedural rules that bar petitioner from presenting these unexhausted claims to the Supreme Court of Virginia. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (recognizing Virginia's bar on successive petitions qualifies as adequate and independent); O'Dell v. Netherland, 95 F.3d 1214,

15

1243 (4th Cir. 1996) (recognizing Virginia's habeas statute of limitations qualifies as adequate and independent). Accordingly, these unexhausted claims are treated as technically exhausted and procedurally defaulted.

**B.**

A petitioner also procedurally defaults a federal habeas claim when "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006). A state court's finding of procedural default is entitled to a presumption of correctness, provided two foundational requirements are met. 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259-61 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991); Harris, 489 U.S. at 260.

The Supreme Court of Virginia declined to adjudicate claims 17, 35, 40, 56, 62, 67, 75, 77, 79, 81(i), 81(iii), 88-89, 91-94, and 96-100 pursuant to Slayton v. Parrigan, 215 Va. 27, 305 S.E.2d 680 (1974).[7] The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotations omitted). Therefore, the Supreme Court of Virginia dismissed these

---

[7] Slayton precludes a Virginia court from reviewing a non-jurisdictional claim in a petition for a writ of habeas corpus when that claim could have been presented at trial and on appeal but was not.

16

claims pursuant to an independent and adequate state procedural rule, and petitioner procedurally defaulted these claims.

## C.

A federal court may not review a procedurally defaulted claim absent a showing of a fundamental miscarriage of justice or cause and prejudice. Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1316 (2012). A court does not need to consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

A petitioner's unfamiliarity with law or a court's procedural rules does not provide a basis for establishing cause. See, e.g., Harris v. McAdory, 334 F.3d 665, 668-69 (7th Cir. 2003) (finding that a petitioner's pro se status does not constitute adequate ground for cause). Instead, cause constitutes a factor external to the defense that impeded compliance with the state procedural rule, a novel claim, or an error by counsel. Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Counsel's error may serve as cause if petitioner demonstrates (1) that the error was so egregious that it violated petitioner's constitutional right to effective assistance of counsel, and (2) that the ineffective assistance claim itself is exhausted and not procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). A procedural default will not bar a federal habeas court from considering a "substantial" ineffective assistance of counsel claim if a petitioner did not have counsel in the initial review proceeding or if counsel in that proceeding was ineffective.[8] See Martinez, 132 S. Ct. at 1316, 1318. (noting that a petitioner must show that the underlying

---

[8] In Virginia, an ineffective assistance of counsel claim is not cognizable on direct appeal and must be raised via a state habeas petition. See, e.g., Roach v. Commonwealth, 251 Va. 324, 335 n.4, 468 S.E.2d 98, 105 n.4 (1996), overruled in irrelevant part by Morisette v. Warden of the Sussex I State Prison, 270 Va. 188, 202, 613 S.E.2d 551, 562 (2005); Hall v. Commonwealth, 30 Va. App. 74, 82, 515 S.E.2d 343, 347 (1999).

ineffective assistance claim used to excuse a procedural default must be "substantial" by having "some merit").

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.[9] Strickland, 466 U.S. at 687-88.  The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."[10] Id. at 694.

Claims 3, 9, 11-16, 18-26, 28-34, 36, 38, 39(i)-(iii), 41(i)-(iii), 42(ii), 43-45, 46(i), 57, and 80(ii) allege the ineffective assistance of counsel.  Claims 20, 25, 28, 32, 38, and 44 are not "substantial" because the claims do not relate to cognizable habeas claims, as noted supra, part II, and, thus, cannot describe prejudice.  Petitioner also fails to describe a "substantial" claim of ineffective assistance of counsel in unexhausted claims 13, 18-19, 22, 26, 29, 31, 36, 39(ii)-(iii), 41(i)- (iii), 42(ii), 43, 45, and 80(ii).[11] For the following reasons, none of the unexhausted ineffective assistance of counsel claims are "substantial," and petitioner is not excused from

---

[9] "[A]n attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a constitutional violation."  Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).  Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time."  Id.  "[E]ffective representation is not synonymous with errorless representation."  Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978).
[10] If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether he has satisfied the other prong.  Id. at 697.
[11] Ineffective assistance of counsel claims 3, 9, 11-12, 14-16, 21, 23-24, 30, 33-34, 39(i), 46(i), and 57 are exhausted and analyzed under § 2254's deferential standard in part IV, infra.

procedurally defaulting claims 1, 2, 5-6, 8, 10, 13, 17-20, 22, 25-29, 31-32, 35-38, 39(ii)- (iii), 40-45, 46(ii), 47, 49-56, 58-81(i), and 81(iii)-100.

In claim 13, petitioner alleges counsel was ineffective for allowing the admission of untrustworthy evidence and testimony, but petitioner fails to identify the allegedly objectionable testimony, to state a legally cognizable ground upon which counsel could have objected to its admission, or to explain how he was prejudiced by its admission.  Therefore, petitioner has not shown a substantial question to excuse default of claim 13.

In claim 18, petitioner alleges counsel was ineffective for not objecting to the admission of the victim's drawings.  Although he argues that the mother asked the victim to make the incriminating drawings because she wanted a divorce and custody of the victim, petitioner has neither identified any evidentiary basis on which counsel could have objected to the drawings nor shown that the result of the trial would have been different without the drawings.

In claim 19, petitioner alleges counsel was ineffective because counsel did not receive petitioner's phone calls from jail.  Petitioner does not explain how this alleged fact constitutes deficient performance or resulted in prejudice.

In claim 22, petitioner alleges counsel was ineffective for not objecting to Brown's testimony because no audio recording of Brown and petitioner's alleged conversation existed and because the Commonwealth induced Brown's testimony with an offer of leniency.  However, counsel cross examined Brown about the Commonwealth's deal and impeached Brown's credibility without an audio recording.  Furthermore, petitioner fails to identify an evidentiary basis on which counsel could have made a reasonable argument to exclude Brown's testimony.

19

In claim 26, petitioner alleges counsel was ineffective for not objecting when the Commonwealth called a "surprise" witness. However, petitioner was not entitled to advance warning of the Commonwealth's witnesses, and no reasonable basis existed for counsel to object. See Gray, 518 U.S. at 168 (recognizing no constitutional right to discovery in a criminal case); Va. Sup. Ct. R. 3A:11 (providing very limited discovery in criminal cases, which does not include the right to advance notice of the Commonwealth's witnesses).

In claim 29, petitioner alleges counsel was ineffective for not arguing that the victim's interview was not recorded and that investigators asked the victim leading questions. Petitioner does not establish that he had a right to have the victim's interview recorded or proffered evidence to show that the victim's testimony was a product of anything but her own memories.

In claim 31, petitioner alleges counsel was ineffective on appeal because new counsel was assigned to the appeal. However, petitioner fails to establish any deficient performance or resulting prejudice from the mere appointment of new counsel.

In claim 36, petitioner alleges counsel was ineffective for not objecting to the admission of evidence about his military discharge for selling LSD. Counsel successfully objected to this evidence during the Commonwealth's case in chief, and the jury was not permitted to consider petitioner's discharge. The discharge was admitted for sentencing purposes, which was relevant and proper. See Va. Code § 19.2-299 (permitting a presentence report that described a convict's general and criminal history).

In claims 39(ii) and (iii), petitioner alleges counsel was ineffective for not arguing in a motion for new trial and on appeal that the trial judge should have recused himself for being the same judge for petitioner's divorce proceedings. The Supreme Court of Virginia already held

20

that the judge's participation in divorce proceedings was not a ground for recusal, and thus, counsel could not be deficient for making this meritless argument.

In claims 41(i)-(iii), petitioner alleges counsel was ineffective for not receiving specialized training in child psychology and advanced questioning techniques and for not hiring an expert in "social attitudes" to disqualify the victim's testimony as influenced by her parents' marital problems.  Counsel was a former child-abuse investigator, who had expertise in questioning child victims, and he hired an expert child psychologist, who reviewed the victim's preliminary hearing testimony and deemed her credible.  Petitioner fails to establish what counsel could have done differently with the training or another expert to produce relevant, admissible evidence that could have caused a different outcome.

In claim 42(ii), petitioner alleges counsel was ineffective for not objecting to the admission of the knife.  Counsel did object to its admission, and petitioner's claim has no basis in fact.

In claim 43, petitioner alleges counsel was ineffective for not adequately preparing for the appeal to the Court of Appeals of Virginia and failing to have a court reporter transcribe oral argument.  Petitioner fails to cite a Virginia law that would permit counsel to have a court reporter present for appellate argument, and he fails to establish that the result of the appeal could have been different with a court reporter present or unspecified, "adequate" preparation.

In claim 45, petitioner alleges counsel was ineffective for not objecting to the mother's testimony merely because she was a witness in the divorce proceedings.  In claim 80(ii), petitioner alleges counsel was ineffective for not objecting to the mother's and her friends'

testimonies because the mother was divorcing petitioner.  Petitioner does not describe any legal

basis to make these frivolous objections.

For the foregoing reasons, petitioner fails to establish either deficient performance or

resulting prejudice for the unexhausted claims of ineffective assistance of counsel.

Consequently, none of these claims are substantial, and I may not review the procedurally

defaulted claims.

## IV.

Claims 3, 7, 9, 11-12, 14-16, 21, 23-24, 30, 33-34, 39(i), 46(i), 48, and 57 are exhausted,

not barred from federal review, and present federal issues.  After a state court addresses the

merits of a claim also raised in a federal habeas petition, a federal court may not grant the

petition unless the state court's adjudication of a claim is contrary to, or an unreasonable

application of, clearly established federal law or based on an unreasonable determination of the

facts.  28 U.S.C. § 2254(d).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable

application of" federal law is based on an independent review of each standard.  Williams v.

Taylor, 529 U.S. 362, 412-13 (2000).  A state court determination is "contrary to" federal law if

it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a

question of law or if the state court decides a case differently than [the United States Supreme]

Court has on a set of materially indistinguishable facts."  Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the

federal court finds that the state court "identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

22

case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003). Furthermore, "[a] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, ___, 130 S. Ct. 841, 849 (2010).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). See, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

For the reasons described hereafter, the Supreme Court of Virginia's adjudication of claims 3, 7, 9, 11-12, 14-16, 21, 23-24, 30, 33-34, 39(i), 46(i), 48, and 57 was neither contrary to, or an unreasonable application of, clearly established federal law nor based on an unreasonable determination of the facts. Accordingly, petitioner is not entitled to habeas relief.

## A.

In claims 7 and 48, petitioner alleges that the trial court erred by giving an "improper" informant instruction. Petitioner presented this claim to the Supreme Court of Virginia on direct

appeal after the Court of Appeals rejected the merits of the claim.[12]  See Ylst v. Nunnemaker,
501 U.S. 797, 803 (1991) (holding that a federal court can rely on a reasoned state court
judgment resting primarily on federal law when later unexplained state court orders uphold that
judgment).  The Court of Appeals rejected the claim because the trial court gave an instruction
about how to determine credibility similar to petitioner's proposed jury instructions about
credibility and jailhouse informants.

     The legality of the jury instructions depends on "whether the ailing instruction by itself so
infected the entire trial that the resulting conviction violates due process, not merely whether the
instruction is undesirable, erroneous, or even universally condemned[.]"  Henderson v. Kibbe,
431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)) (internal
citations and quotation marks omitted).  "The burden of demonstrating that an erroneous
instruction was so prejudicial that it will support a collateral attack on the constitutional validity
of a state court's judgment is even greater than the showing required to establish plain error on
direct appeal."  Id.

     The Court of Appeals of Virginia's disposition of this claim does not warrant habeas
relief.  The trial court's instruction describing how to determine credibility fully and fairly
covered the information petitioner requested in his proposed instructions.  Although the trial
court's instruction did not specifically discuss jailhouse informants, the instruction fully and
fairly recited the same issues the jury could consider to determine how much, if any, weight to

---

[12] The Supreme Court of Virginia refused to consider the merits of this claim during habeas review because the trial
court and the Court of Appeals of Virginia already decided the claim, pursuant to Henry v. Warden, 265 Va. 246,
249, 576 S.E.2d 495, 496 (2003).  Henry is not a bar to federal habeas review where the underlying claim concerns a
federal constitutional issue.  Bell v. True, 413 F. Supp. 2d 657, 711-12 (W.D. Va. 2006), aff'd sub nom. Bell v.
Kelly, 260 F. App'x 599 (4th Cir. 2008).

attribute to Brown's testimony.  Accordingly, the jury instructions did not violate due process, and claims 7 and 48 do not warrant habeas relief.

## B.

The Supreme Court of Virginia relied on <u>Strickland</u> to dismiss petitioner's ineffective assistance of counsel claims 3, 9, 11-12, 14-16, 21, 23-24, 30, 33-34, 39(i), 46(i), and 57.  None of these claims described deficient performance or sufficient prejudice, and the Supreme Court of Virginia's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

In claims 3 and 15, petitioner alleges counsel was ineffective for not requesting a change in venue due to pretrial publicity.  The Supreme Court of Virginia's rejection of these claims was proper because only three of twenty-four venire members had read anything about the case before trial, of which one was excused for questioning her own impartiality after talking to the mother's friends.  The two other venire members recalled reading something about the case, could not remember the details of the articles, and affirmed their impartiality.  Furthermore, the two short news articles about petitioner's arrest and bond hearing were factually accurate and were not inflammatory.  Accordingly, counsel was not deficient for not filing a meritless motion to change venue.  <u>See, e.g.</u>, <u>Teleguz v. Commonwealth</u>,273 Va. 458, 476-77, 643 S.E.2d 708, 721 (2007) (holding trial court did not err by denying motion to change venue when defendant proffered only two examples of media coverage and jurors affirmed impartiality).

In claims 9 and 12, petitioner alleges counsel was ineffective for not cross examining two of the Commonwealth's witnesses: Stacy Rose and Barbara Adolfi.  The Supreme Court of Virginia properly rejected the claims because petitioner 1) failed to proffer either what questions

25

counsel should have asked them or their answers, and 2) failed to establish that the outcome of the proceeding could have been different with the additional testimony. Petitioner similarly fails to establish that the result of the proceeding could have been any different by cross examining these witnesses. Furthermore, counsel's strategic decision to not cross examine these two witnesses, the mother of the victim's friend and a medical professional who testified about the trauma the victim suffered, is entitled to deference. See Strickland, 466 U.S. at 689 (recognizing a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance).

In claims 11 and 16, petitioner alleges counsel was ineffective for not objecting to unspecified[13] hearsay evidence. To the extent petitioner alleges the same hearsay claims as presented to the Supreme Court of Virginia and considered meritless, he is not entitled to relief. Petitioner previously argued that the victim's and Brown's testimonies were hearsay because their testimonies contradicted petitioner's testimony, but petitioner did not have evidence to support these claims. Furthermore, petitioner's statements to Brown and the victim constituted "party admissions," an exception to the hearsay rule. See, e.g., Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996) (describing the applicable evidentiary rules).

In claim 14, counsel was allegedly ineffective for not finding inmates who would testify that Brown is an untrustworthy liar. Petitioner relied on four inmates who filed affidavits that asserted they would have testified as such had counsel called them, but their potential testimonies were not admissible under Virginia law. See, e.g., Chiles v. Commonwealth, 12 Va. App. 698, 699-700, 406 S.E.2d 413, 414 (1991) (recognizing a witnesses may not testify about a

---

[13] In the state petition, petitioner alleged that counsel failed to object to the victim's and Brown's entire, alleged hearsay testimony.

26

personal opinion of another person or to a special reputation of another person formed upon a single occasion). Furthermore, counsel tried to elicit unfavorable character evidence about Brown being a liar during Lt. Smith's cross examination, but the trial court sustained the Commonwealth's objection.

In claim 21, counsel was allegedly ineffective for failing to prepare for trial and thereby missing the opportunity to impeach A.H.'s testimony during the sentencing hearing. In claim 57, petitioner confusingly alleges counsel was ineffective for not objecting to A.H.'s testimony for not remembering the alleged abuse she previously testified had occurred, allegedly in violation of Brady v. Maryland, 373 U.S. 83 (1963). In claim 46(i), petitioner alleges counsel was ineffective for not objecting to A.H.'s testimony as perjury.

These claims are meritless. A.H. testified that petitioner had molested her when she was a minor and that Social Services declined to pursue her allegations as "unfounded" and "due to lack of memory." A.H. reaffirmed in her testimony that the molestation did occur, not that she did not recall the molestation as petitioner alleges in claim 57. Furthermore, petitioner was aware of the woman's allegations and the investigation's outcome long before trial, and he fails to describe a Brady violation. Moreover, counsel cross-examined A.H., impeaching her accusations as "unfounded," and petitioner fails to establish that the woman's testimony about abuse constituted perjury.

In claim 23, counsel was allegedly ineffective for waiving petitioner's presence when the trial court answered questions from the jury about whether petitioner's sentences would run concurrently or consecutively and whether the trial judge could reduce the sentences recommended by the jury. The trial judge asked the prosecutor and counsel whether petitioner's

27

presence was necessary before answering the questions, but counsel waived petitioner's presence. The trial judge then told the jury, "Sentences run consecutively – only the court may run them concurrently. You should impose whatever sentence you should determine to be proper within the instructions. You are not to concern yourselves with what may happen afterwards."

Petitioner alleges he would have asked the trial court to answer the jury's questions with the definitions of "concurrent" and "consecutive." The Supreme Court of Virginia properly rejected this claim because the jury's questions did not ask for the definitions or "betray some misunderstanding" of these concepts. Consequently, petitioner fails to establish that prejudice resulted from the jury not being told the definitions of "concurrent" and "consecutive."

In claims 24 and 39(i), counsel was allegedly ineffective for not requesting the trial judge's recusal because the same judge presided over petitioner's divorce proceedings. The Supreme Court of Virginia properly rejected the claim because "opinions formed by the judge on the bases of facts introduced or events occurring in the course of the current . . . or of prior proceedings[] do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994). Nothing in the record evinces the judge's favoritism or antagonism or any other legitimate basis to file a motion for recusal.

In claims 30 and 34, appellate counsel was allegedly ineffective for not adequately investigating and not amending the petition for appeal based on unspecified, new evidence. The Supreme Court of Virginia properly rejected these claims because petitioner failed to proffer

28

what an "adequate investigation" would reveal or what meritorious appellate claim should have been raised that could have caused a reasonable probability of overturning a conviction.

In claim 33, appellate counsel was allegedly ineffective for not raising three unspecified issues on appeal.[14]  To the extent petitioner alleges the same hearsay claims as presented to the Supreme Court of Virginia and considered meritless, he is not entitled to relief.  Petitioner did not articulate any legal basis which counsel could request a DNA expert because DNA evidence was not an issue, and consequently, petitioner also cannot establish prejudice.  Petitioner's unsolicited confession to Brown did not implicate Miranda v. Arizona, 384 U.S. 436 (1966), or the Fifth Amendment, and ineffective assistance of counsel claims may not be raised on direct appeal in Virginia.  Roach, supra note 8, at 18.

## V.

Petitioner filed numerous motions during the pendency of this action, including two documents docketed as a miscellaneous motion about deadlines and institutional roadblocks and as a motion to amend.[15]  In these documents, petitioner complains about access to a prison law library and mailing hundreds of pages of documents to the court.  Petitioner may not litigate an access to court claim in this habeas action, and these motions are denied.  See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (discussing which claims may be brought via a § 2254 petition and a civil rights action).

---

[14] In the state petition, petitioner alleged that counsel was ineffective for not arguing petitioner was entitled to the assistance of a DNA expert; for not arguing on appeal that Brown's testimony was inadmissible because Brown violated the Fifth Amendment by not Mirandizing petitioner; and for not arguing on appeal that trial counsel was ineffective.

[15] The motion did not seek to amend another filing.

Petitioner filed a "Motion for Waiver" of the exhaustion requirement to excuse his failure to present many of the instant claims to the Supreme Court of Virginia and a "Motion to Revisit" that motion.  Petitioner also filed a "Notice of Petitioner's Action in State Courts to Exhaust Barred Claims," explaining that he presented the unexhausted claims to the Circuit Court of Rappahannock County and the Court of Appeals of Virginia.  Presenting the unexhausted claims to these courts instead of the Supreme Court of Virginia does not constitute exhaustion, and I do not have the jurisdiction to invalidate § 2254's exhaustion requirement.  28 U.S.C. § 2254(b)(1)(A); Va. Code §§ 17.1-411, 8.01-654; Va. Sup. Ct. R. 5:9(a).  Even if petitioner presented the unexhausted claims to the Supreme Court of Virginia during the pendency of this action, at least two independent and adequate state procedural rules bar state habeas review.  See supra, part III.A.  Accordingly, I deny petitioner's request to hold this case in abeyance until he presents the technically-exhausted, procedurally-defaulted claims to the Supreme Court of Virginia.  See Rhines v. Weber, 544 U.S. 269, 273 (2005) (recognizing the difference between unexhausted claims necessitating a stay and technically-exhausted, procedurally-defaulted claims that do not require a stay).

I also deny petitioner's motion to compel production of state court records, to hold respondent in contempt, and to assess sanctions.  Petitioner is not entitled to copies of all records of his criminal and habeas proceedings from the Circuit Court of Rappahannock County, the Court of Appeals of Virginia, and the Supreme Court of Virginia.  Respondent complied with Rule 5(d) of the Rules Governing § 2254 Cases, and petitioner does not allege that respondent misstated any transcript, which I independently reviewed to adjudicate this action.

30

Because petitioner is not entitled to relief and no matters remain in this action, I will not order petitioner to be released on bond, and petitioner's motions to appoint counsel and motion to amend a motion to appoint counsel are denied as moot.

### VI.

For the foregoing reasons, none of petitioner's claims entitle him to habeas relief, and I grant petitioner's motion to amend the response; grant respondent's motion to dismiss; and deny petitioner's various motions. Based upon my finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

**ENTER:** This 15th day of March, 2013.

Senior United States District Judge